IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSEPH HAUSCHILD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   CIVIL NO. 09-015-GPM |
| | ) |
| MARVIN POWERS, M.D., TERRY CALIPER, GRACE HART, AMY "DOE", and JOCELYN "DOE", | ) ) ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

This matter is before the Court on Defendant Terry Caliper's (Ms. Caliper) Motion for Summary Judgment based on qualified immunity (Doc. 25), and on Plaintiff Joseph Hauschild's (Hauschild) Appeal (Doc. 39) of Magistrate Judge Proud's denial of Hauschild's Motion for Reconsideration of Appointment of Counsel (Doc 37). A hearing on these motions was held on January 25, 2010. On March 4, 2010, Ms. Caliper filed a second Motion for Summary Judgment based on the merits (Doc. 42). The Court has thoroughly reviewed this new motion and its accompanying memorandum. For the reasons outlined below, both Motions for Summary Judgment and Hauschild's Appeal are **DENIED**.

Hauschild, an inmate at the Tamms Correctional Center (Tamms), claims that Ms. Caliper, the Health Care Unit Administrator at Tamms, violated 42 U.S.C. § 1983 by: (1) being deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the United States Constitution, and (2) by retaliating and discriminating against him because of his atheist beliefs in

violation of the First and Fourteenth Amendments, respectively.  Ms. Caliper moves for summary judgment, and alleges she is entitled to qualified immunity from all of Hauschild's claims.

## BACKGROUND

On summary judgment, the Court considers the facts in a light most favorable to the non-moving party and adopts reasonable inferences and resolves doubts in favor of that party.  *Nat'l Athletic Sportswear, Inc., v. Westfield Ins. Co.,* 528 F.3d 508, 512 (7th Cir. 2008).  Hauschild injured his knee while running in the Tamms prison yard on February 23, 2007.  Since then, his knee has been swollen and sore (at least intermittently).  Hauschild allegedly submitted roughly 44 medical request chits concerning his knee between February 2007 and April 2009.[1]  Initially, Hauschild was seen very regularly — roughly 13 times in a six-month period between March and August of 2007.  Some level of swollen tissue and "small knee-joint effusion" was diagnosed by Dr. Marvin Powers, M.D., Medical Director of Tamms,[2] and Motrin and other anti-inflammatories were prescribed.  Hauschild complained to Dr. Powers and various nurses that the Motrin seriously upset his stomach, but it continued to be prescribed.  During his August 8, 2007, appointment with Dr. Powers, Plaintiff revealed that he was an atheist to which Dr. Powers allegedly responded, "Since you don't believe in God, you'll never see a specialist while I work here.  And I don't care if you die on Motrin" (Doc. 6, p. 5).  After this appointment, Hauschild was not seen at all between August 2007 and February 2008, in spite of allegedly submitting at least five medical request slips (Doc. 38, p. 3).

Hauschild filed grievances against Ms. Caliper and the medical staff at Tamms on May 14,

---

[1] At the hearing, Ms. Caliper alleged that 44 of Hauschild's chits could not be authenticated as genuine because they were hand-written copies and the originals could not be located in his medical file.  Nevertheless, on Summary Judgment we accept Hauschild's submissions as true.  This Court, however, will not consider any chits submitted after April 1, 2009, the date of Ms. Caliper's retirement.

[2] Dr. Powers is also a Defendant in this case, however, he is not implicated in Ms. Caliper's motions.

2007, and August 9, 2007. Additionally, on August 27, 2007, and October 3, 2007, Hauschild sent letters to Ms. Caliper requesting her assistance (Doc. 1, Ex. 1, pp. 50-51). In his August, 27, 2007, letter Hauschild specifically mentioned that Dr. Powers was discriminating against him because of his atheist beliefs. According to an affidavit from another inmate, in either March or May 2008, as Ms. Caliper walked past Hauschild's cell he attempted to speak with her and asked why his chits were not being processed. Ms. Caliper allegedly responded, "I don't treat Atheists." (Doc. 38, Ex. J, p. 2). Hauschild claims he was seen only once or twice between Jan. 2008 and Jan. 2009, in spite of submitting 16 medical request chits (Doc. 38, p. 4).

Hauschild therefore alleges that Ms. Caliper was deliberately indifferent to his medical needs because she failed to process his medical request chits. Hauschild further claims that Ms. Caliper engaged in discriminatory and retaliatory conduct because she was aware of his atheist beliefs and, on that basis, denied him access to medical care. Ms. Caliper submits that she is entitled to summary judgment on Hauschild's deliberate indifference claim because: (1) Hauschild failed to adequately allege her involvement in his course of treatment, (2) she did not act with a "sufficiently culpable state of mind" and, (3) she "fulfilled her duty of providing access to healthcare" and can't be held liable for the alleged "misdeeds of others" (Doc. 26, pp. 7-11). Regarding Hauschild's discrimination and retaliation claims, Ms. Caliper asserts Hauschild has not alleged she was aware of his atheistic beliefs and, even if she did have knowledge, "she would have been unable to change the course of the Plaintiff's treatment" (Doc. 26, pp. 11-13). In her new motion for summary judgment on the merits, Ms. Caliper essentially makes exactly the same arguments (*see* Doc. 43). However, Ms. Caliper now asserts that Mr. Hauschild "was continuously seen by medical professionals … during the relevant time periods," and he has not established that any unprocessed medical chits resulted in a delay that detrimentally effected his medical treatment (Doc. 43, p. 9)

**LEGAL STANDARDS**

The standard applied to summary judgment motions filed under Rule 56 is well-settled and has been succinctly stated as follows:

> Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether a genuine issue of material fact exists, [the Court] must view the record in a light most favorable to the nonmoving party. Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial.… A mere scintilla of evidence in support of the nonmovant's position is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion.

*Albiero v. City of Kankakee*, 246 F.3d 927, 931-32 (7th Cir. 2001) (internal citations and quotations omitted). With this firm and familiar standard in mind, however, the Court is obligated to construe Hauschild's *pro se* Complaint liberally. *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006).

"Qualified immunity is not simply a defense to liability. It also provides immunity from suit." *Tun v. Whitticker*, 398 F.3d 899, 901 (7th Cir. 2005). The defense is "available to government officials performing discretionary functions that affords them protection from civil liability." *Lee v. Young*, 533 F.3d 505, 512 (7th Cir. 2008). The Court makes two key inquiries in evaluating qualified immunity: "(1) whether the facts, taken in the light most favorable to the plaintiff[], show that the defendant[] violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009). "[T]he court may decide these questions in whatever order is best suited to the case at hand." *Id.*, *citing Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). Further, in circumstances such as this, the analysis of whether there is a genuine issue of material fact and the analysis of whether

the defendant is entitled to qualified immunity effectively collapses into one inquiry. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002).

## ANALYSIS

Here, the constitutional rights in question — under the First, Eighth and Fourteenth Amendments — were clearly established. *See, e.g., Walker*, 293 F.3d at 1040 (7th Cir. 2002) ("The general standard for liability under the Eighth Amendment for refusal to treat a serious medical condition was well-established at the time of these events"); *DeWalt v.Carter*, 224 F.3d 607, 618 (7th Cir. 2000) ("An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution"); *Babcock v. R.L. White*, 102 F.3d 267, 276 (7th Cir. 1996) (A prisoner's right to seek administrative remedies, as well as the right to be free from retaliation for exercising this right has been "long recognized" by federal courts.  Further, prison officials are "on notice that *any* retaliation, whatever its shape, could give rise to liability."); *Sherwin Manor Nursing Center, Inc. V. McAuliffe*, 37 F.3d 1216, 1220 (7th Cir. 1994) (A violation of the equal protection clause of the Fourteenth Amendment occurs when a state actor purposefully discriminates against a person because of his or her identification with a particular group); *Kaufman v. McCaughtry*, 419 F.3d 678, 682 (7th Cir. 2005) ("The Supreme Court has recognized atheism as equivalent to a 'religion' for purposes of the First Amendment on numerous occasions").  As such, the only issue is whether Ms. Caliper's alleged conduct violated any of these rights — an inquiry requiring identical substantive analysis for both of Ms. Caliper's Summary Judgment Motions.

### Eighth Amendment Deliberate Indifference Claim

"[D]eliberate indifference to the serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).  This proscription applies to "both prison

doctors in their response to the prisoner's needs [and to] prison guards" who interfere with an inmate's access to medical care. *Id*. at 105. To prevail on an Eighth Amendment claim, a prisoner must show that "(1) he had a serious medical need, and (2) the defendants were deliberately indifferent to it." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001).

"In the medical care context, the objective element requires that the inmate's medical need be sufficiently serious." *Walker*, 293 F.3d at 1037. Ms. Caliper does not make any argument as to the seriousness of Hauschild's diagnosed knee injury. Further, Ms. Caliper makes no argument regarding the extent of the risk, if any, that a lack of treatment posed to Hauschild's health or safety. As such, Ms. Caliper impliedly waives any argument that Hauschild's injury was not "objectively, sufficiently, serious." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). For summary judgment purposes, therefore, this prong of the Eighth Amendment analysis is a non-issue.

To avoid summary judgment on the second prong, however, Hauschild must produce evidence demonstrating that Ms. Caliper "acted with a sufficiently culpable state of mind." *Greeno*, 414 F.3d at 653 (internal quotations omitted). That is, "[t]he official must know of and disregard an excessive risk to inmate health." *Id*. The Eighth Amendment does not provide a right to demand specific treatment or even the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Jones v. Drew*, 221 F. App'x 450, 454 (7th Cir. 2007). An official with knowledge of a an inmate's serious medical condition can be deliberately indifferent, however, even without completely ignoring them. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). On summary judgment, "the complete question is whether, when viewing the record in the light most favorable to [Plaintiff], a reasonable trier of fact *could* conclude that [Defendant] was subjectively aware of [Plaintiff's] serious medical condition and either knowingly or recklessly disregarded it." *Id*.

Here, regarding Ms. Caliper's subjective awareness, Hauschild alleges that "each defendant

had reason to know the Plaintiff had a serious physical injury and that injury caused chronic pain and deterioration" (Doc. 6, ¶ 10). In support of this claim, Hauschild has submitted evidence — namely, three Offender Grievances to which Ms. Caliper responded, and two letters which he sent directly to her — that Ms. Caliper was subjectively aware of his ongoing medical issues (*see* Docs. 1-1, pp. 2-13, 22-23 and 50-51; Doc. 38, p. 77). Further, a reasonable juror could infer that Ms. Caliper, as the Health Care Unit Administrator, saw at least some of the over 41 medical request slips that Hauschild allegedly submitted regarding his knee. This evidence is sufficient to create a genuine fact issue regarding Ms. Caliper's subjective awareness of Hauschild's medical condition.

Whether Ms. Caliper either knowingly or recklessly disregarded Hauschild's condition is a closer issue. Contrary to Ms. Caliper's assertion, here, Hauschild is not attempting to hold her vicariously liable for the alleged misdeeds of others (*see* Doc. 26, p. 9). Rather, Hauschild claims that it was Ms. Caliper's "duty as Health Care Unit Administrator to make sure Plaintiff's medical request slips were properly processed" (Doc. 38, p. 3). Ms. Caliper admitted that she had at least some involvement in the processing of medical request chits (*Id.* at p. 82). As such, a reasonable trier of fact could conclude that Ms. Caliper either knowingly or recklessly disregarded some or all of these chits and therefore, disregarded Hauschild's medical condition.[3] Her Motions for Summary Judgment on this count must therefore be denied.

### First Amendment Retaliation Claim

To succeed on a First Amendment retaliation claim Hauschild must show that (1) he engaged in protected conduct; (2) "he suffered a deprivation that would likely deter First

---

[3] Indeed, in *Greeno v. Daley*, 414 F.3d 645 (7th Cir. 2005), an analogous prisoner civil rights case, the Seventh Circuit Court of Appeals found that the plaintiff (a state prisoner) created a jury issue as to whether the Director of the Bureau of Health Services, who received copies of the plaintiff's grievances, was deliberately indifferent to the plaintiff's "deteriorating medical condition." *Id.* at 654-55.

Amendment activity in the future; and (3) the [protected] activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)(citation omitted). However, "[t]o state a cause of action for retaliatory treatment, a complaint need only allege a chronology of events from which retaliation may be inferred." *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir. 2000). Ms. Caliper, correctly notes that the "ultimate inquiry is whether the allegedly retaliatory events would have transpired differently, absent the retaliatory motive." *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996).

Here, the protected conduct that Hauschild allegedly engaged in included "pursuing [his] recorded beliefs as an atheist and fil[ing] grievances regarding conditions at Tamms" (Doc 6, p. 4). Of course, both pursuing religious beliefs and filing grievances is conduct protected by the First Amendment. *See Kaufman v. McCaughtry*, 419 F.3d 678, 682 (7th Cir. 2005) ("The Supreme Court has recognized atheism as equivalent to a 'religion' for purposes of the First Amendment on numerous occasions"); *Hasan v. U.S. Dept. Of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005) ("Prisoners' grievances, unless frivolous, … are deemed petitions for redress of grievances and thus are protected by the First Amendment." (internal citation omitted)). As such, Hauschild has established that he was engaged in conduct protected by the First Amendment.

The next question is whether Ms. Caliper's alleged retaliatory activities — namely, failing to process numerous medical chits — would "deter a person of ordinary firmness from exercising First Amendment activity in the future." *Bridges*, 557 F.3d at 546 (internal citation omitted). Hauschild, like the Plaintiff in *Bridges*, makes no specific allegations to help answer this inquiry. However, like the *Bridges* Court, when construing Hauschild's *pro se* complaint liberally, a reasonable juror could infer that a person receiving no response to over 41 medical chits might be deterred from exercising their right to submit grievances in the future because the process would

likely seem futile. Again, this Court is not addressing whether Hauschild's allegations are in fact true, or whether such activity is in fact a sufficient deterrent, but rather this Court is only drawing "reasonable inferences" in Hauschild's favor. *See Id.*

The last prong of a First Amendment retaliation claim involves causation analysis. For a plaintiff to establish that his protected activities caused the defendant's actions, the plaintiff must show the defendant (1) knew of the plaintiff's protected conduct and (2) the plaintiff's conduct was at least a motivating factor of Defendants' alleged retaliatory response. *Garrett v. Barnes*, 961 F.2d 629, 632 (7th Cir. 1992).[4] Hauschild alleges that "Defendants took the adverse acts simply because Plaintiff was involved in the protected conduct" (Doc. 6, ¶ 3). Hauschild further alleges that the Defendants, including Ms. Caliper, "vindictively departed from the normal policies of providing care" because of his atheist practices (Doc. 6, ¶ 6). Thus, Ms. Caliper's statement that "Plaintiff never alleges Ms. Caliper know of his atheistic viewpoint or took action because of a said viewpoint," is patently incorrect (Doc 26, p.12).

Indeed, there can be no question that Ms. Caliper clearly knew of Hauschild's protected conduct of submitting grievances because she responded to all three of his grievances; with her first response dated May 22, 2007 (*see* Doc. 1-1, pp. 2, 14 and 77). Further, regarding Hauschild's atheist beliefs, the latest date upon which Ms. Caliper could have become aware of his beliefs was August 13, 2007 — when she responded to Hauschild's August 9, 2007, grievance in which he

---

[4] In *Gross v. FBL Financial Servs., Inc.*, 129 S.Ct. 2343 (2009), which involved an Age Discrimination in Employment Act (ADEA) claim, the Supreme Court required "but-for" causation for the mixed-motive jury instructions at issue. However, in *Fairley v. Andrews*, a case involving 42 U.S.C. § 1983, the Seventh Circuit Court of Appeals reviewed a grant of summary judgment and found, "the record has evidence from which a reasonable jury could find causation; no more is necessary at this stage, but the instructions at trial must reflect the holding of *Gross.*" 578 F.3d 518, 525-26 (7th Cir. 2009). Thus, it appears that the motivating or substantial factor test survives *Gross* and is sufficient to withstand summary judgment, but a jury must find "but for" causation for a plaintiff to establish his prima facie case.

alleged Dr. Powers was withholding treatment because of his beliefs (Doc. 1-1, pp 22-23). Hauschild claims (and at this point we must take his claims as true) that he submitted over 20 medical request chits after this date, only one or two of which were actually processed (*see* Doc. 38, pp. 3-4). As such, a reasonable trier of fact could conclude that Ms. Caliper (1) knew of Hauschild's protected conduct — both his grievances and his atheist beliefs — and (2) Hauschild's conduct was a motivating factor in her alleged retaliatory response of not processing his chits.

In sum, Hauschild has offered sufficient evidence and a chronology of events from which retaliation reasonably could be inferred. *See Mays v. Springborne*, 575 F.3d 643, 650 (7th Cir. 2009). Further, Ms. Caliper has offered no evidence that she would have taken the alleged retaliatory acts despite the improper motive. *Id.* Ms. Caliper does allege that Hauschild received ongoing treatment, but whether or not his chits were being processed is a genuine facts issue. At this stage, no more is required for Hauschild's First Amendment retaliation claim to survive summary judgment.

### **Fourteenth Amendment Discrimination Claim**

Hauschild also claims that Ms. Caliper's failure to process his medical chits was discriminatory in violation of the equal protection clause of the Fourteenth Amendment. A plaintiff asserting an equal protection violation must establish that a state actor has treated him differently because of his membership in a particular class and "that the state actor did so purposefully." *DeWalt v.Carter*, 224 F.3d 607, 618 (7th Cir. 2000); *Sherwin Manor Nursing Center, Inc. V. McAuliffe,* 37 F.3d 1216, 1220 (7th Cir. 1994). Discriminatory purpose "implies that the decision-maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on an identifiable group." *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982). Further, most claims of discrimination based on religion are

"governed by the religion clauses of the First Amendment, leaving for the equal protection clause only a claim of arbitrariness unrelated to the character of the activity allegedly discriminated against." *Reed v. Faulkner*, 842 F.2d 960, 962 (7th Cir. 1988).

Thus, to overcome summary judgment, Hauschild needs to offer evidence of an apparent pattern of arbitrary enforcement of regulations regarding the processing of medical chits. *Id.* at 964. Hauschild, however, has offered no evidence that inmates of other religions were treated more favorably regarding how frequently their medical chits were processed. As such, he has not established a triable issue on this question and summary judgment is appropriate on this claim. *See Gonzalez v. Litscher*, 79 Fed.Appx. 215, 218-19 (7th Cir. 2003).

### **Motion for Reconsideration of Appointment of Counsel**

Finally, also before the Court is Hauschild's Appeal (Doc. 39) of Magistrate Judge Proud's Order denying Hauschild's Motion for Reconsideration of Appointment of Counsel (Doc 37). Hauschild's initial motion for appointment of counsel was denied by this Court because he failed to demonstrate that he made any attempt to obtain counsel (Doc. 8, pp. 7-8). Magistrate Judge Proud then denied Hauschild's Motion for Reconsideration of Appointment of Counsel, construed as a Renewed Motion for Appointment of Counsel, because (1) it did not believe his limited attempts at seeking counsel had been diligent and (2) the Plaintiff adequately communicated his positions to the Court (Doc. 37, pp. 1-2). This Court will not disturb a Magistrate Judge's ruling unless it was clearly erroneous. *See* Fed. R. Civ. P. 72(a); U.S. Dist. Court South. Dist. of Ill. Local Rule 73.1(a).

In his Order, the Magistrate Judge cited the correct legal standards and thoroughly considered numerous factors to determine whether the appointment of counsel would be appropriate. This Court agrees that Hauschild is adequately handling his litigation; that is, the difficulty of his case does not appear to exceed his capacity — as demonstrated most recently by his thorough

response to the summary judgment motion in which he makes strong legal and factual arguments and correctly cites relevant case law.  As such, the Court cannot find that the Magistrate Judge's Order denying the appointment of counsel was clearly erroneous.  Hauschild's Appeal is **DENIED**.

## CONCLUSION

In sum, Hauschild has put forth sufficient evidence that (1) his knee injury was objectively, sufficiently serious within the meaning of the Eighth Amendment, and (2) a genuine issue of material fact exists as to whether Ms. Caliper was subjectively aware of Hauschild's injury and either knowingly or recklessly disregarded it.  A triable fact issue also exists as to Hauschild's First Amendment retaliation claim; specifically, whether Ms. Caliper (1) knew of Hauschild's atheist beliefs or other protected conduct, and then (2) engaged in retaliatory acts — namely, disregarding some or all of Hauschild's medical request chits — at least in part, because of her knowledge of his protected conduct.  However, Hauschild did not put forth sufficient evidence to show a violation of his equal protection rights under the Fourteenth Amendment.

Accordingly, Defendant's motions for summary judgment (Docs. 26 and 43) are **DENIED in part,** on Hauschild's claims under the First and Eighth Amendments, and **GRANTED in part,** on Hauschild's Fourteenth Amendment equal protection claim.  Finally, Hauschild's Appeal (Doc. 39) of Magistrate Judge Proud's Order denying Hauschild's Motion for Reconsideration of Appointment of Counsel (Doc 37) is **DENIED**.

**IT IS SO ORDERED.**

DATED: 03/24/10

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge